and we are ready to proceed with 19-4127 United States v. Chavez and that's is that consolidated with 4-1-2-1 or do I have the number wrong this 19-4-1-2-1 United States v. Chavez that is the case name and number thank you very much we're ready to proceed this morning yes and I think that's pronounced the Montreux Montreux yes your honor thank you thank you very much thank you good morning I am Bellamy de Montreux I am the lawyer for Mr. Chavez Antonio Chavez thank you for having me this morning this case has a couple of issues that we presented to the court the first one is the stop of the car whether or not it was justified and further the second issue is this the scope of of the stop of the detention excuse me on the first issue it is argument that your honors the officer trooper Gibbs did not have a reason to stop the car now we have to start by looking at the first point that the district court seemed to rely on that the officer would say that one of the reason was because Mr. Chavez was following a semi-truck too closely now if you look at the totality of the facts it does not make sense because the officer was parked on that December 28th day at 11 45 somewhere flashing his lights on the traffic to see what's passing now after Mr. Chavez passed him the officer then decided to follow Mr. Chavez to see if he can find some kind of a reason to stop the car in other words trying to see if a traffic violation might occur to stop the car so he followed Mr. Chavez for about a mile Mr. Chavez is in the right lane which is the slow lane and the officer himself making his presence known because he pulled right after is on the left lane which is the fast lane so Mr. Chavez then is following a semi-truck and the semi apparently is not speeding because Mr. Chavez is following him and then the officer himself apparently is not going fast enough so therefore the officer himself is maintaining the same speed now any human being a person is only a person under the circumstances would wait to see if the officer is going to pass because he in the fast lane so it makes complete sense that Mr. Chavez would be behind the semi so after a while when it looks like this was not going to happen Mr. Chavez made a legal entry in front of entry flashing well and then he passed the semi and then this come that's where we're arguing that this does not make sense the officer did not cite him did not complain that that was the reason for the stop of the car anywhere in his testimony however now Mr. Chavez makes the appropriate two signals flash twice and enter in front of the semi and pass the semi now we submit to you the video in this matter where you can see it with your own eyes in your de novo review that Mr. Chavez made a legal re-entry in the left lane in front of the semi it blinked twice and then we trial court below erred say we disagree with you on the video and that we count less than two seconds on the video where does that leave you that take us to the detention your honor so as the law is very clear and you have taught us that for forever if truly the officer had a reason to so what happened there is critical and we all can agree and the law is clear throughout all the time that has been argued in this court in the supreme court and in the trial court that if the officer had a reason to count to maintain to delay the detention then that would be legal but in this case what do we know the officer arrived to the car and he immediately asked for and he received immediately the driver's license he also immediately received the rental agreement to the uh that gave Mr. Chavez permission to drive the car but what was the time what was the difference in timing did he i thought the record was that he couldn't immediately produce the the rental agreement how how long did it was it after he gave his driver's license that he produced the rental agreement you are practically immediately practically immediately he offered and gave the rental agreement now the officer took exception to the rental agreement simply because it had expired earlier in the day but Mr. Chavez went on to offer all kind of uh uh proof to the officer that uh the rental agreement was extended for example he told the officer there is a sticker on the windshield that the officer could scan the officer said no i don't have that but further he offered the officer a copy of uh a credit card uh statement and also an email showing that he still had permission to drive the car all right so now that didn't happen immediately though right there was some time passage between him providing the rental agreement itself and then providing the email offering up the email and the receipt that did not happen immediately but Mr. Chavez was very clear that he had permission to drive the car that he explained to the officer he extended that and uh he later shortly thereafter not that long offered further proof that the car was expanded but more importantly the officer himself testified that he doesn't he does he did understand at the time that any person can uh extend uh a rental agreement by telephone so therefore the officer did not have an issue from the worker that we have that there was a problem with on with permission or the legality of Mr. Chavez driving that car your honor okay have i answered your question yes thank you thank you so therefore judge uh with all this going on here the officer went to his car and uh practically almost immediately he uh filling uh the citation but he requested uh he took forever uh trying to get well even after he filled the citation he is trying to get dispatch to add to check uh not yet trying to get dispatched to check but he kept texting to different uh dog handlers police officers with canine to send somebody to the scene uh to to check Mr. Chavez and then at some point here he decided as well to check with dispatch to see if Mr. Chavez have uh any uh warrants or a criminal record now while this is going on he kept trying to call at two three at one o'clock in the morning he's trying to call enterprise the car rental to find out whether or not Mr. Chavez still had permission to drive the car so it was during that time that Mr. Chavez came and offered to him proof further that he had permission to drive the car which he said i don't want to see it i'm not interested in it so while the citation is prepared ready to go dispatch informed the officer that Mr. what is clear in this is that the officer is delaying this encounter hoping to get a canine over even though the citation is prepared ready to go even though he fully is aware that Mr. Chavez does not have a warrant that he is not wanted anywhere but he delayed to get the canine over and then finally get that and then went ahead and then uh sniffed the car in order to find further evidence to keep to arrest Mr. Chavez so it is a position that uh uh the detention lasted too long it was not related in scope with the purpose of this stop that Mr. Chavez was fully compliant and there was no reason to stop the car to i mean to continue detaining him now there are some questions i'm sorry you you saw me so you're uh is your position that he waited too long to call dispatch and get his criminal background or that he didn't need to get the criminal background at all that that was in it in and of itself that was excessive uh your honor we do understand that an officer can do that you have ruled that an officer can call to check maybe for safety reasons whatsoever but there was no safety concerns that night with this encounter as far as Mr. Chavez was concerned i mean it was late at night it was midnight yes we're past midnight in fact it went from December 28th into December 29th while this is happening i mean that's a factor that might be considered isn't it say that again your honor that's a factor that might be considered as far as officer safety goes isn't it that it was late at night uh your honor perhaps but when you look at the circumstances of this case when you when you look at the video when you consider the interaction between the parties officer officer safety was not a concern the concern was trying to find out whether or not there was a reason further to keep Mr. Chavez or trying to delay to keep Mr. Chavez there in order to get a canine there this is being done at the same time the officer is texting to say about everybody available trying to have a dog over this is being done this is being done after we know for sure the officer has already failed his citations and he's fully aware that there is no reason to keep Mr. Chavez there let's go let's go back a little bit okay so you you agree then that it's okay for the officer to get a criminal background on on the driver when he pulled over and what i'm trying what i'm what i'm concerned about here is whether it's your position that since you agree that it was okay for them to do that did they wait too long to do that should the offer be at least that information and is that where the problem is the problem is judge uh in the fact that uh the purpose of it when you read this was not officer safety even though we agree he could do that it was specifically done to delay to get a dog to come over to sniff the position of the facts but another reading of the facts could be that the officer you know called it in for safety reasons uh that is uh the common reason why and that is what you have ruled before for safety reasons but at the same time looking at the totality of the circumstances the interaction with the parties we could all agree that safety was not a concern in this case the only purpose of the delay and which was pretty long in relationship to the citations being done to the officer receiving certification of that mr chavis does not have a warrant or a criminal or it was not wanted or a criminal record the purpose was just delaying because they encountered the purpose of the detention was fulfilled and might i add with the time that i have i would like to nervous uh in fact the officer said his suspicion was because he was proud the suspicion is because he wanted a ticket to go and i ask you could i ask you real quickly because you're on out time what happened on the other end of the enterprise rattle calls did it just ring off the hook and nobody ever answered just about the hook your honor apparently the officer getting getting to the after midnight time and then uh the answering by some tape recorder so therefore that never materialized he couldn't find anything as far as the car is concerned so they could have stayed there for hours before he got a hold of someone from enterprise at least to surmise that would have been the case judge even though in this case he had confirmation that there was no reason and the car was not reported stolen if i may reserve if i'm necessary on the question please i'll reserve a minute or two time is reserved thank you counsel may it please the court elizabeth ann stevens assistant united states attorney for the district of utah i'll start with the propriety of the traffic stop the district court's factual finding that mr chavez did not signal for two seconds preceding the beginning of the lane change was not clearly he signaled for about one and a half one one and three quarters minutes the district court's factual finding was that he signaled for less than one second so the first blank is at 12 44 14 the second blank is at 12 44 15 so if you think about the second hand of it's one second in duration that the signal lamps are actually flashing and trooper gibbs also testified that two blinks of turn signals does not amount to two seconds of time so the district court not only had the dvd of the traffic stop which showed the time stamps and the signals under utah law who flashes it's not a second make okay all right now let me ask you this it seems that the real reason here for the stop is suspicion of drug movement and almost immediately the officer came to the conclusion that he was going to call a canine correct that's well i i wouldn't isn't this case uh really about whether there was probable cause uh to call a canine unit in the first place because that's what caused the delay and as we evaluate whether delay was reasonable we have to determine the cause of the delay or the purpose of the delay and it all boils down in my book to whether there was probable cause to call that canine unit in the first place if there was then probably the delay could have been reasonable but i'll hear your argument on this point well your honor i don't think that particular argument about calling the canine was actually presented to the district court in the way that your honor is presenting it here but i think the issue if the court wants to go there that's always the case that you try one case in the courtroom and then you go to the court of appeals and try another one very true very true but here the question would be whether or not the officer had reasonable suspicion to call the drug doc you wouldn't need probable cause to do that and so if you actually look at the factors here fair enough um trooper gibbs actually had reasonable suspicion within four minutes of the traffic stop and he goes um to the car after seeing some what cause what what are the facts leading to the reasonable suspicion all right so first when trooper gibbs is watching traffic go by he sees mr chavez go by and he considers to be unusual behavior that usually people will pass a semi-truck they won't sit behind it so that's the first thing the second thing is that doesn't make reasonable suspicion regarding drugs that leads to a lot of reasonable suspicion poor driving maybe with judge carson driving who knows uh but but in and of itself that doesn't mean drugs right i mean just discomfort discomfort that you have a policeman behind you so you go slow so they go past you a lot of people do that without drugs that's absolutely one um reasonable and innocent interpretation of the behavior but we need to consider all of the other factors as well all right well let's hear so after he passes the semi-truck and does not signal properly trooper gibbs puts on his lights and mr chavez does not immediately pull over he continues to drive past an exit ramp trooper gibbs testifies that in his experience now he's been a trooper at this point for five years and does approximately 600 to 700 traffic stops per year he found it unusual that he would pass an exit ramp because usually drivers are looking for a safe place to pull over here it's quarter to midnight it's dark utah highway i-15 instead mr chavez passes the exit ramp and then pulls over near an overpass that's the second thing the next thing is trooper so far so far i haven't heard drugs but go ahead okay so trooper gibbs then approaches the window and engages mr chavez in conversation he obtains his driver's license he asks for registration mr chavez indicates it's a rental car and then trooper gibbs asks for the rental agreement mr chavez says he can't find it and he tells trooper gibbs to just scan the barcode on the rental car's window trooper gibbs tells him that law enforcement doesn't have the ability to do that and then suddenly mr chavez is able to find his rental agreement and passes it on to the trooper now that whole time period of trooper gibbs being at the window was a minute and 11 seconds so it was really very quickly so at this point we know that it's a rental car and this court has said that rental cars are known to be used for drug trafficking by the couriers and in the case i'm particularly thinking of uh this court had actually said even though the district court had not relied on that as a factor the presence of the rental car that it was still appropriate for this court to consider that in terms of the factors supporting reasonable suspicion so we have a rental car trooper gibbs asked mr chavez to come back to the vehicle and he declined so he goes back to his car no no no the trooper thinks so doesn't he under the law i don't think that's suspicious and the trooper also thinks it's suspicious that he had his license ready in his hand when the trooper got those that is that is unusual and i think it's fair for this court to give deference to the district court because under mccray i believe it is this court has said that unusual behavior considered by an officer to be suspicious behavior can support reasonable suspicion and in mccray what the unusual behavior was was once the trooper went back to his vehicle the defendant sat up straight in his car and watched the officer through his rear view mirror so that's certainly no no more suspicious than what is happening here but here this court has to give weight to the differences drawn by the court as well as by local law enforcement so mr rather mr chavez has given the agreement to trooper gibbs trooper gibbs goes back to the car he looks at it and he sees it's overdue it was rented in arkansas and it's overdue and mr chavez is in utah which is quite a bit away from arkansas and then he also sees and this is important that the vehicle was not even authorized to be driven outside of the state of arkansas so this is all up until four minutes into the traffic stop and he has reasonable suspicion to believe there's drug trafficking because there's a rental car there's suspicious behavior and he's entitled to call a drug dog at that point if the court reaches that um that was not ruled on by the district court because that argument wasn't made below the court considered all of the factors in terms of assessing whether or not there was reasonable suspicion but it's the united states position that as of four minutes in there was enough reasonable suspicion to call a drug dog and in fact trooper gibbs why do you say that you have to have reasonable suspicion to call a drug dog that's assuming that um this stop would otherwise be unreasonably detained otherwise no of course as long as the stop is being as long as the stop is reasonable in duration they don't have to have any reason to call the drug dog and that would be our our position and that's what you know hold on not so quick hold on not so quick i want to pursue this you mean to tell me that i am going down to wyoming to visit judge phillips and i step on the pedal a little too heavily i'm going five miles over the speed limit and i'm stopped for speeding that you're saying the wyoming state patrol at that moment can call a drug dog because i was speeding down the highway absolutely your honor what's your case on that you can call the judge phillips knows the case but i guess i'm ignorant of it uh the what's what's the case saying you don't even have to have reasonable suspicion to to call drug drug dogs uh it's rodriguez your honor says during a stop officers may conduct i hope i didn't write that no no it's a supreme court case all right officers may conduct a dog without probable cause or reasonable suspicion if it does not prolong the time reasonably required to complete the mission of the stop and that's that's the key it does not well but this time this one delayed 25 minutes right and that's what i was getting to and also judge lucero which is this notion that we can do things in stages which is to say the stop occurs at 11 45 uh the trooper sits in his car and writes the citation which takes till 11 53 not till then does the trooper then call and ask for criminal history and whether there's a warrant and so forth which extends the stop it prolongs it and the way that that's so important is because with those extra eight minutes there's enough time for the drug dog to get there what is your authority that says that a trooper can do things in stages like this and call enterprise and let the phone ring off the hook and keep a driver prolonged during that time that's that's where my hang up is with your case okay so i would point to rodriguez i would point to this court's decision in mayville let me point to rodriguez because here's what justice ginsburg said she's um authority for the seizure thus ends when tasks tied to the traffic infraction are or reasonably should have been completed there's no reason that when the trooper went back to the car the trooper couldn't have called and said i would like to find out about warrants and is this driver's license valid so why isn't that an unreasonable extension of the stop well in this court's decision in cortez which i can send a 28 j later on that was uh decided just a few months ago the court said rodriguez does not prohibit all conduct that in any way shows rather slows the officer from completing the stop as fast as humanly possible and that's a quote from an 11th circuit case that this court adopted in cortez and the mere fact that an officer could have that's also in cortez i'm not talking about how fast he wrote the citation though that he could have written cursive instead of printing it i'm talking about eight minutes that he lapsed when there's no reason and which my experience is typically is done go back to the car look at the license call dispatch and then dispatch is working on this but waiting till i'm ready to what's happening here it's a late night stop the trooper is having to keep an eye on two people there's only one of him at the time and the cases say including the decision is sharp that a court shouldn't second guess police officers decisions by imagining means by which they could have accomplished their objective more quickly and so by saying that an officer can't do some other things before calling dispatch would fly in the face of all of that case law and i believe it's this court's decision in patterson which i don't believe was cited in the brief but it's 472 f 3rd 767 rejected an argument that uh defendant made that a triple eye check should have been called in sooner and in that case um the trooper had examined some documents and had chatted with the defendant and then called in the triple eye check so i think in light of patterson and sharp and mayville which is a triple eye check case as well as well as cortez in order for this court to say that what trooper gibbs did was inappropriate the court would have to say it was unreasonable as a matter of law for him not to immediately call dispatch when he got back his patrol vehicle and that flies in the face of many cases in this court as well as in the supreme court well what's the limit then could he have waited 15 minutes it would depend on what he was doing your honor i mean that's the thing we don't put a stopwatch on it and we have to look at the factors here and we don't even know how long particular things took beyond these big chunks of time because it wasn't explored in the district court like this if there are no further questions well i do have a question under rodriguez uh it seems to me that the clause that you kind of delayed a little to read to us that is as long as it does not unreasonably prolong the stop that that exception almost swallows up any potential of calling a canine without a delay because the purpose of the stop was a traffic violation if it's now if you're now going to call it a traffic dog that almost immediately is going to prolong the stop beyond its intended purpose which was the traffic stop i could imagine a scenario and there are some cases where the trooper has a drug dog himself and so he can do his inquiries call into dispatch and while he's waiting for dispatch he can run his dog around so it wouldn't be delayed at all but the point i want to make here is that the touchstone of the fourth amendment is reasonableness it's not perfection and what trooper gibbs did here in light of the differences properly drawn by the court and by the law was constitutionally permissible thank you counsel i think you had what a couple yeah two minutes left so i'm ready to hear from you thank you judge thank you uh your honor you have taught us and i have learned from this court for about a quarter of a century that there are factors that would indicate that would support an officer's under the circumstances of this case they just do not exist what do we have here we have a car that uh assuming that the officer had a reason to stop the car when he went to the car what did you observe there was no smell that raises suspicions there was no black eyes hanging in the in the visor that would say there's something going on it was just that way this suspicion would be because the man had his driver's license ready lately we have learned that when basically and i hate to bring this in but i have let myself the minute the police officer stopped my car immediately i get my wallet get my driver's license ready as a matter of safety for myself because of news that i've heard that is the best thing to do there is nothing suspicious about that it's a matter of uh that's maybe that's for him to give his driver's license immediately now we heard from counsel that one minute and 11 seconds was the only delay was was the delay by the side of the car during that time we know that the officer knew it was a car rental we knew that he received the car rental and he did not bring anything at all to quote in the record to tell us why the car was what gave him that suspicion to to to to justify that there could be drugs in the car and that a dog would be needed nothing the only thing he would say is that mr chavis was that was not nervous that raises suspicion and i submit to you based on your jurisprudence that is just not factors those are not factors that would lead somebody to consider that to suspect that there was drug in the car it was an unusual trip though which is to say we're talking arkansas to bakersfield california and all within a week and and uh your honor i would agree with you except that was not one of the reason that that this uh the officer even suspect in fact based on the record he did not even bring travel plans arrangements or the itinerary as a as a as a as a as a as a circumstance that would uh that he relied on none your honor have i uh answered your questions any further questions for me no further questions your time has expired counsel are excused